Call in case 15-4293, Lloyd Brown III v. United of Omaha Life Insurance Company. Oral argument not to exceed 15 minutes per side. Craig Carlson for the appellant. Good morning, Your Honors. May it please the Court. I'm Craig Carlson, here on behalf of the appellant. United of Omaha Life Insurance Company, which I can't keep saying for 15 minutes, I will call us united throughout the course of the argument. Judge Cook, I ask the Court for 2 minutes of rebuttal. We're here this morning because we submit the District Court erred in awarding judgment to the appellee. We believe that actually utilizing the deferential standard of review required by the policy's terms, this Court should uphold United's decision that its policy required Mr. Brown to have insurance coverage in effect prior to United's insuring the plan in order for Mr. Brown to avoid having to provide evidence of insurability. Your Honors, we want to discuss the facts ever so briefly. Westside employed Mr. Brown in 2011 when Hartford, a different insurer, insured Westside's benefit plan. In the fall of 2011, Hartford decided that it would open up an enrollment for a new plan year to begin February 1, 2012. So in December 2011, Mr. Brown telephonically requested... Could I ask you this, Counsel? I take it that when he telephonically requested, was the date selected by virtue of this habit of having plan years or the proximity of the new plan year? February 1 is the date. I can't specifically answer that question, Judge Cook, only that in December 2011, there was a plan in place. It was a Hartford plan, the details of which I don't know. Although Mr. Brown had the basic $20,000 in coverage that was provided by Westside, he did not have any other voluntary. Well, that's the only voluntary. The other is not voluntary, is it? I should distinguish between basic and voluntary. He did not have any voluntary. He had the basic benefit provided by the employer. And that goes to everyone? Correct. I'm just making that assuming that everybody gets the $20,000 and thereafter, if you want more, you pipe up. Correct. Okay. So I interrupted you, but I sort of wanted to know that date, whether February 1 was... Is it coincidence that it's the beginning of a new plan year? Your Honor, since we didn't insure the plan and it's not our plan, we're just the insurer of that subsequent plan year, whether it was a... It sounds like it was a plan that would have begun for whatever reason. So everybody by now knows a whole lot about this employer? Correct. Okay. And I have one other before you finish. What was Mr. Brown paid? You get five times your annual salary. No one in any brief has told us what was his pay. I don't know, Your Honor. Really? Yes. Okay. So then you would assume that the $150,000 figure is the amount that would have been available? Well, again, Your Honor, I guess jumping a little bit forward, we think the guarantee issue under the policy says it's either five times your insurance, five times your salary, or $150,000 unless you had... Whichever is less by... Whichever is less, correct, unless you had insurance in effect with the prior plan. Under the district court's decision that in December of 2011, electing $30,000 of insurance to begin in February of 2012, the district court determined that was insurance in effect. Under the language of the guarantee issue, that would have limited his insurance to $30,000. Say that again, why? I could find the exact language in a moment, Your Honor. The guarantee issue says... Oh, you're down to that guaranteed issue? Yes. We took you there. Yes. And frankly, I don't think there's a big dispute ultimately about the standard. I mean, there has been some discussion about whether the inherent conflict of interest would somehow alter the standard of review. I think this court has plainly stated, in fact, in the Huffaker case, which both the appellee and we cited, we think the court has rejected that and said, you still get the arbitrary and capricious standard of review. It's the least demanding form. It needs to be given extreme deference. The court should uphold the decision if there's substantial evidence supporting the record, even if it disagrees with it. I don't think that's... That's your primary argument here today... Yes. ...is that the standard of review dictates a different result. Correct. So we took you off your game. So if you want to back up... No, that's fine because, in fact, I don't think there's probably a lot of dispute about that, and I'd like to turn maybe to a little closer examination of the facts in light of the policy. And frankly, Your Honor, to answer the question of why we don't know exactly how much he made, the record doesn't have a specific figure. Arguably, we could have extrapolated based on his paychecks, although, as I understand it, he was an overrode trucker. Those paychecks are not necessarily consistent for 52 weeks. Also, if I was going to get into mathematical extrapolation, I probably would have picked a different profession than lawyering. So let's turn to the guarantee issue because we do believe that limits it, and we actually think that gives us arguments on both sides of the fence. The guarantee issue, which is defined at page 14 of the administrative record or page ID 84 of this court's record, says your guarantee issue amount is five times your annual earnings or $150,000, whichever is less, unless you were insured under a prior plan. If you were insured under a prior plan, your guarantee issue amount is equal to the amount of insurance that was enforced for you under a prior plan before the policy date. We submit that the district court's rationale, that Mr. Brown had in fact elected insurance under a prior plan, must suggest that he therefore had insurance in force under a prior plan, and therefore... Go ahead. I want to finish that. You want to hear the therefore. I do want to hear the therefore, please. If he had insurance in effect, in force, and that's because the district court actually used the term, it never technically went into effect. But you're following through with, so he elected it and the court thought that... He had it, therefore he had $30,000, and therefore under the guarantee issue, which says if you were insured under a prior plan, your guarantee issue is equal to the amount of insurance that was enforced for you under a prior plan before the policy date. Your point is, so it's $30,000. At most. If there were a valid election, and we dispute that there was. That was your finish for that. Yes. So I'm sorry. So Judge Strang... Actually, I didn't hear your final question. I apologize. I'm struggling with the difference between the elected and covered. I think probably the first issue for you is subsection D, that an employee or dependent who was eligible for insurance under a prior plan did not elect such insurance. It appears to me that your argument is that it is a question of coverage as opposed to a question of election. I'm struggling with that because in these kinds of cases, you live or die by what the language in the contract is. The language in this contract says elect. Correct? It does. And so how do you take that elect and extrapolate into a covered requirement when all the contract says is elect? Frankly, I think our interpretation was rational in the sense of it didn't necessarily contemplate that you would elect for a forward period of time in which the insurance never took effect. Again, the difficulty for me is that you are the master of the language that you select in creating this contract, and the language that you selected was not covered. The language that the entity selected was elect. I don't see any question, particularly in light of this record, that Mr. Brown elected coverage. I'm looking at your references in the administrative record that refers to the amount of insurance elected was $30,000 through a voice recording under the prior carrier, and also stating, I have shared findings of enrollment showing Brown III's dad had elected $30,000. It seems to me that you are bound by your determination that he elected $30,000 of insurance. Doesn't the question then become what's the effect of the so-called election? Is that coverage? I'll answer Judge Scranton's question first, Your Honor. The language does say elected. We believe that under these circumstances, that perhaps in some circumstances our policy language would not be ambiguous, but under this circumstance where there is a request, an election, for insurance that never takes effect, at worst our policy language is ambiguous, and this Court has routinely held that if we provide a rational interpretation, that this Court will uphold that interpretation even if it doesn't necessarily agree with it. That's my response. I don't think that makes you happy, but that is... Well, I think my happiness is not at issue. The question is what does the law say about that? And I think if you drafted the language, then in the vernacular you're hung with it. I respectfully disagree, Your Honor. I think the law actually says if we drafted the vernacular and this Court determines it's ambiguous and we believe at worst that's what it is, then standard of review provides that we get significant discretion, and if we have a rational interpretation, this Court should uphold that interpretation. In looking at what the term elected means, it would seem to me that the question is whether it is arbitrary and capricious to say elected really means covered as opposed to elected means what it says, selection. Perhaps, well, I understand your point from a language perspective. If you look at the record, there was never any thought on United's part of what the meaning was. Repeatedly throughout the investigation, whether they talked internally, whether they talked to Westside, whether they talked ultimately to the appellee or his counsel, they routinely, uniformly were interpreting elected as covered in effect. So if you determine that that's arbitrary and capricious, that was how United uniformly and routinely interpreted that language. But that actually is a segue to another point. We believe the language of the policy supports the fact that there was no coverage in effect and there should be no award to the appellee. But that's not where the Court stopped. And there is nothing in the record, in fact, the policy has repeated provisions that if in fact the $30,000 were an election, if in fact our interpretation of the policy that there was at least $30,000 was arbitrary and capricious, the policy limits the amount of coverage to $30,000. In the investigation, Westside pointed to the telephone call, said he'd only requested $30,000. True North, the insurance broker, quoted or said in a quote, we are 100% certain he never requested $150,000. How could you have taken from his paycheck $28.34 every week without having his permission for the purpose of buying insurance? Judge Franch, we did not take it from his paycheck. Westside erred. Westside made a mistake. Westside provided three censuses, two that showed Mr. Brown had nothing in coverage, one that showed Mr. Brown had $150,000 in coverage. On the two that showed he had zero, the employee above him had $150,000. On the one that showed he had the $150,000, he had zero. What you're saying is that there were some questions on the records, but the difficulty for me is that you accepted this gentleman's payment. Your Honor, my response to that is that the policy itself, because we have to rely, it is the employer, the policyholder's responsibility, Westside, has to tell us who's insured and for how much. But we are not bound by what they tell us. The policy, in the mystery of record at page 27 and at page ID number 97, before this court, says the payment of premium does not guarantee eligibility for coverage because that's what happens here. The employer has made a mistake. We're not aware of it. They'd have to make good for their employee on the amounts they took in error. Well, and in fact, when we notified the appellee that we were denying the claim, we notified him that Westside owed the premium back, and then when we notified Westside that the claim was denied, we notified them. They owed him the return of the premium that had been taken out of his paycheck. The only follow-up question I would have is that what you read had to do with guaranteeing eligibility. And is eligibility not a distinct issue from coverage that is being provided? It perhaps can be, but if the court has already determined there is coverage, it is still the employer's responsibility to tell us how much. And we get to ultimately determine the benefit. And so we're allowed to take a look at what the employer has said, how much versus our view of the record, and it was limited to $30,000. I understand I'm way over my time. I just want to point out that as we set forth in our brief, there are multiple provisions in the policy that said if he started with $30,000, he would have had to have had evidence of insurability to request a greater amount. You have your argument, counsel. You have your rebuttal time. Thank you, Your Honor. Mr. Carlson. Good morning, Your Honors. My name is Attorney Ryan Schepler. I represent the appellee, Mr. Brown. As an introductory issue to answer a question that the court previously asked, Mr. Brown's yearly salary was approximately $55,000 a year, and that's contained in administrative record page number 253, having had the opportunity to listen to argument and look at the administrative record myself. I would just like to refer to the specific language in the policy because if the court were to look at that language in the policy, it would clearly see that the abuse of discretion standard is completely irrelevant in this case. This is a straightforward case of contract interpretation. Specifically, the focus of the questioning to Mr. Carlson I'm not sure. Are you discounting entirely the argument that the insurer may interpret its policy? Not at all. Okay. Well, I thought you said, well, so the issue is only abuse of discretion or straight contract interpretation? This is an issue of straight contract interpretation in that there is no discretion. By the insurer? Correct. That's my question. Interpretation by the insurer. Where? And what the district court needed to do with regard to that interpretation is the argument, primary argument, I think. Correct. And the insurer undoubtedly has discretion. My point is that where the contract itself is unambiguous, where the plain language of the contract dictates a certain result, it is necessarily an abuse of discretion to decide otherwise. All right. So go ahead for your interpretation that's clear-cut. Yeah. And I think that's most clearly shown by the intentional decision to use the word elect in certain places and insured in other places. And I take election to mean a decision to apply for insurance in the future versus being insured as having coverage in effect. And I want to read the guarantee issue amount language that was referred to. Your guarantee issue amount is five times your annual earnings or $150,000, whichever is less, unless you were insured under a prior plan. Mr. Brown wasn't insured under a prior plan. He had only elected coverage under a prior plan. What's the overarching? The guarantee comes way much later in the policy. This is about amounts, is it not? Amounts one is eligible for? It is. I think it is both with respect to amount and with respect to eligibility for coverage whatsoever. So progressing down the page, and it's actually on the same page as the language dictating when evidence of insurability is required, subsection D specifically states evidence of insurability is required for an employee or dependent who is eligible under a prior plan but did not elect such insurance. The inverse, this being the argument on which the district court relied, if he had elected insurance under a prior plan,  going up the page then to the guarantee issue amount language, that further buttresses that by saying if Mr. Brown were insured under a prior plan, his guarantee issue amount was whatever the insurance was under a prior plan, but he was never insured under a prior plan. Because of that, his guarantee issue amount is five times the annual earnings or $150,000, whichever is less. The intentional choice between the word elect and the word insured dictates a particular result in this case, and it is necessarily an abuse of discretion if the insurer otherwise determines that there was no insurance. Even if the court were to determine, however, that Mr. Brown was required to submit evidence of insurability, again, the plain language of the policy itself unambiguously requires United to seek that evidence of insurability from United of Omaha. Every reference in the policy to evidence of insurability requires specifically to their discretion as to what evidence of insurability means. Under your first argument, based on his wages and the guaranteed amount, even though he was billed for a policy that covered, what, $181,000, wouldn't he be limited to the $150,000 of guaranteed issue? The guaranteed issue amount is only that amount which is required to be given initially without any evidence of insurability. The insurer has discretion later to request evidence of insurability. So at the outset, Mr. Brown applied for $30,000 of insurance, which is obviously less than $150,000, so he's clear within that policy provision. Later, when his insurance amount went up to $180,000. How did it go up? The administrative record is silent as to what happened with that. I'm interested in the verb, that it somehow went up. It just can't happen like that. Our argument is that he intentionally applied for an increase in insurance. In the absence of any evidence of that? There is no evidence other than the fact that he subsequently had withholdings from his paycheck in the amount of approximately $28 and never objected to that withholding. If Mr. Brown had not applied for an increase of insurance, he would have certainly objected to a seven-fold increase in his withholding for voluntary life insurance. The absence of any submission of evidence of insurability isn't fatal to this fact because, again, throughout the policy, United of Omaha has the discretion to require or not require evidence of insurability. For example, and this goes to United of Omaha's obligation to determine whether the insured is eligible for insurance. On the administrative record, page 19, the policy states, for any increase in insurance, we will use the policyholder's records and or premium we have received to verify the amount of insurance being requested is the appropriate insurance amount for which the insured person is eligible to receive under the terms of the policy. Policy itself creates an unambiguous obligation for United of Omaha to confirm that the insured is eligible upon receiving the premium. They received this increased premium for eight months. I wonder about the mechanics of that Westside deducts and when does it submit to Omaha? The administrative record indicates that the premium payments are remitted monthly. For the whole census, so to speak, these censuses that were? The administrative record isn't entirely clear as to what the censuses, I'm sorry, entail and what they describe. We basically have a lengthy several hundred page spreadsheet. What are the grounds or the basis for the remitting to the insurer? Honestly, it's not entirely clear from the record. I think that's United's contention, but I cannot tell based on the record. Either way. Correct. And in any event, the amount of withholding in the census does not correspond to the 150,000, which is listed in the census as the voluntary life insurance. The argument that there was some sort of good faith mistake, some error between two employees would hold more water if Mr. Brown was having withholdings that corresponded to $150,000 of insurance, as we showed on the census, but that was not the case. The insurance withholding, I'm sorry, the premium withholding, is equivalent to approximately $181,000 worth of insurance. That figure appears nowhere in the census, and there appears to be no rhyme or reason based on the appellant's theory as to how that happened or why. So is there not a possibility that the amount of coverage over the $150,000, if we assumed that that was the maximum available without evidence of insurability, under your argument would that not state perhaps a 502A3 equitable claim for equitable relief for the remaining amount of the policy? I think in the event the court were to determine that equitable, I'm sorry, in the event that a wrongful denial of benefits claim is inappropriate in this case, which we obviously disagree with, I think there is certainly an equitable claim for either part or the entire amount based on the fact that United of Omaha received these premiums for eight months, had an affirmative duty to confirm that Mr. Brown satisfied their requirements and never did so. As you started your argument, you said this is a contract interpretation case. Yes. So what you're arguing now is this equitable argument and rationale seems out of keeping with that. And you have to answer, if you would please, whether or not I'm correct in my understanding of this appeal that the district court dismissed the equitable aspects of your client's claim. I'm not positive that it is entirely clear from the district court's record. Well, if you're not positive today, how are we going to get this? Well, I can answer your question in that I think it's ambiguous. It's not that I don't know. Specifically, it seems as though the court was dismissing the equitable claims as moot, and the case law is fairly clear that one can't recover for both a wrongful denial of benefits and for equitable remedies under ERISA. Unless there are two distinct injuries. Correct, unless there are two distinct injuries. So with the decision of the district court that, again, this is a straightforward issue of contract interpretation, it's an unambiguous wrongful denial of benefits that eliminates any need to address the secondary equitable issues. So my argument is merely in the alternative, and I think this is a straightforward issue of contract interpretation. But in the alternative, if the court disagrees, I think the court nevertheless has authority to grant an equitable remedy under ERISA. As I read the district court's language, the coverage with Hartford never technically went into effect. I think the court made this argument. You apparently didn't make the argument that the court did. That's actually not correct. We referred explicitly to that subsection in one of our previous filings. You argued that it was that we are in the business of election. Yes, we argued that in a responsive motion for judgment on the administrative record. So that is the ground on which the district court relied, and that was the primary ground that we argued in that motion. But nevertheless— The court's view that election equals coverage was an argument you made. Correct. And we specifically— This is in a responsive pleading. Is that what you're telling me? I'll be looking for that. Okay. And the citation is in the brief. So specifically, the difference between election and coverage is key throughout the entire case. But even if the court decides that that is not a relevant issue and that United of Omaha is correct in its interpretation, or at the very least that United of Omaha didn't abuse its discretion, there is still this obligation that the policy creates to seek out evidence of insurability and to determine what specifically is required for evidence of insurability, because surely the policy doesn't contemplate that Mr. Brown go and seek his own doctor's opinions and go and seek his own medical records without any prompting of United of Omaha. Through a series of errors, no one— This didn't come to light, obviously, until Mr. Brown's untimely death, right? That's correct. So it's a series of errors, but then people start sorting it out. That's correct. Yikes. The census is wrong. The amount is wrong. Yeah, and the defense seems to be that United of Omaha shouldn't be liable based on a string of errors that amounts to gross negligence, as far as I can tell. Errors by the— Errors by both United of Omaha and by Westside. So in conclusion, I would ask the court to affirm the district court's judgment in its entirety. Thank you. Yes, sir. Thank you, Your Honor. I'll be brief in rebuttal. I want to apologize to the court for not suggesting a new Mr. Brown's salary. The record citation counsel provided is actually the census showing Mr. Brown with $150,000 worth of coverage. We don't believe that's accurate. I see. We still don't know what he— I mean, that's how— Correct. Correct. Additionally, I had the 15 minutes. I did the math. 55 times 3 is 165. That doesn't come up with the guarantee issue either. I think it has been relatively undisputed. There is no evidence of a request for anything other than $30,000. Again, Westside, in reviewing its record, said he asked for $30,000. The broker said, we are 100% certain he didn't ask for $150,000. The broker goes on to say, you know, yeah, there are problems. There are errors in the census. We do need to get a figure out. Mr. Brown was likely the only person in that same circumstance, and because we are accepting, and we're allowed to because the policy, page 3 of the administrative record, page ID 73 of this record, says, quote, the policyholder is responsible for keeping the following records, persons insured by classification and any persons eligible but not insured, and then the amount of money the policyholder contributes towards premiums. We are entitled to rely upon the policyholder. To the extent that this is a claim against United, it needs to be an A1B claim. To the extent that there might be some other relief, to the extent that there are gross negligence, that may be an A3 claim against Westside. We understand Judge Strancher's dissent, and I pronounce it Roshow, but we take Roshow and its progeny, including this court's recent March decision in Donati, as saying that there may be some form of relief under A1B, others under A3. In this case, if there were A1B relief, that would be against United. A3 might be a different call against the employer whom we're allowed to rely upon and provided us with erroneous information. Let me ask you, what about the policy argument that the purpose of requiring kind of a fiduciary responsibility on the part of the company that receives premiums for coverage rests on the concept that if you allow the insurance company to take all the premiums and then be only at risk to return premiums, then you incentivize perhaps an improper method of business that would say to a company, no, you can take the premiums and never provide the coverage and simply return the premiums. Doesn't that incentivize an improper method of doing business? Your Honor, we disagree, and I think actually, although it was not exactly on this particular issue, but I think the Supreme Court's rationale in the Glenn case where it stated that actually insurers will not be incentivized to conduct poor business practices because they are in a marketplace. They have competitors and they have regulators. And if they are in the business of incentivizing poor practices, of essentially unfairly taking money, they will lose in the marketplace and they will lose before regulators. I think insurers have attempted to protect themselves by putting that responsibility on the employer, which is what happened here. The policy clearly and unequivocally makes it the employer's responsibility to tell us who has insurance and how much. And if there is an error there, it actually is the employer's issue, not ours. Thank you very much for your time this morning, Your Honor. The Court will consider your case carefully and issue an opinion in due course. We'll have the next case, please.